1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

|  |  |
|---|---|
| CHARTIS SPECIALTY INSURANCE COMPANY, an Illinois corporation, for itself, and as subrogee of Whittaker Corporation; and WHITTAKER CORPORATION, a Delaware corporation, | No. CV-13-1527 EMC |
|  | [PROPOSED] JOINT PLAN REGARDING ELECTRONIC PRODUCTION OF HARD COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION |
| Plaintiffs, |  |
| v. |  |
| UNITED STATES OF AMERICA, | Judge: Hon. Edward M. Chen |
| Defendant. |  |

Error! Unknown document property name.

[PROPOSED] JOINT PLAN RE ELECTRONICALLY STORED INFORMATION
CASE NO. CV-13-1527 EMC

Pursuant to Rule 26(f), the parties enter into this Joint Plan regarding Production of Hard Copy Documents and Electronically Stored Information ("ESI"):

**A.      Electronic Production of Hard Copy Documents.**

1.      The Parties agree that documents existing in hard copy form should be produced in single-page Group IV, 300-dpi TIFF format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format).  Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain (a) ProdBeg, (b) ProdEnd, (c) BegAttach, (d) EndAttach, and (e) custodian name. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

2.      In scanning hard copy documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized).  The Parties will undertake best efforts to unitize documents correctly.

3.      Text of hard copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

4.      Documents containing color shall, to the extent reasonably possible be produced in color. However, the party requesting production shall bear the additional cost of any such production of color documents.

5.      The Parties agree that this Joint Agreement governs only the format of electronic production of documents, and does not preclude a request for the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

//

//

1

1    **B.      Production of ESI**

2        6.      The Parties agree that, except as provided herein, ESI [*e.g.*, e-mails

3    (including attachments), scanned images, Excel spreadsheets, and other electronically

4    stored documents] shall be produced in single-page Group IV TIFF, 300-dpi format and

5    accompanied by an Opticon and IPRO load file (or other generally acceptable load file

6    format) that contains document boundaries. Each TIFF file shall be given a unique file

7    name that matches the Bates number label on the corresponding page.  The full extracted

8    text should be provided.  If a portion of a document is redacted, then OCR text may be

9    provided in place of extracted text.

10       7.      The Parties need not preserve, and will not seek discovery of, the following

11   categories of ESI in this action:

12           a.  Data duplicated in any electronic backup system for the purpose of

13   system recovery or information restoration, including but not limited to, system recovery

14   backup tapes, continuity of operations systems, and data or system mirrors or shadows, if

15   such data are routinely purged, overwritten or otherwise made not reasonably accessible in

16   accordance with an established routine system maintenance policy;

17           b.  Voicemail messages;

18           c.  Text messages and instant messages that are not printed or saved or

19   maintained in a database;

20           d.  Electronic mail sent to or from a Personal Digital Assistant (e.g.,

21   Blackberry or Palm handheld unit), provided that a copy of such mail is routinely

22   duplicated elsewhere;

23           e.  Other electronic data stored on a Personal Digital Assistant, such as

24   calendar or contact data or notes, provided that a copy of such information is routinely

25   duplicated elsewhere;

26           f.  Logs of calls made from cellular phones;

27           g.  Deleted computer files, whether fragmented or whole;

28                                  - 2 -

h.  Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

i.  Server, system or network logs;

j.  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

k.  Metadata associated with any electronic storage device, electronic storage program, or any data contained therein;

l.  Mirror or shadow copies of files or disk drives;   and

m. Electronic data temporarily stored by scanners, copiers, and/or fax machines.

8.     If any discovery request can reasonably be construed to call for the production of such electronically stored information as is listed in paragraph 7, such information need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) will be required as to such information.

9.     Common system and program files (including those defined by the NIST library (http://www.nsrl.nist.gov/), those commonly used by e-discovery vendors to exclude system, non-content bearing files (e.g., logos, web page icons and lines) and program files) need not be processed, reviewed or produced. Additional files may be added to the list of excluded files by agreement of the Parties.

10.     Beginning and ending Bates numbers, the attachment range, and the custodian fields should be populated by the Party or the Party's vendor.

11.     Spreadsheets shall be produced as a native document file along with the extracted text and a link to the native file in the load file.  A TIFF file will also be provided accompanying the file that has been produced in native format.  The TIFF version of the spreadsheet will also have a confidentiality endorsement, if applicable, and a Bates number

- 3 -

endorsement. The TIFF file image of the spreadsheet will include all worksheets, fields and rows unhidden, fully expanded and printed over and then down if the width is wider than one sheet. However, if a document includes redacted information, it need not be produced in native format, but shall be produced along with extracted text except to the extent the extracted text is itself redacted.

12. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image, except as may be redacted for privilege.

13. As noted above, documents containing color shall, to the extent reasonably possible, be produced in color (at the expense of the parties receiving color copies). In the event a document cannot be reproduced in color, the producing Party shall advise the requesting Party of this fact.

14. Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the document level or by message ID and other standard vendor methodology for e-mail) across custodians. However, family relationships will be maintained and only exact email family groups will be de-duplicated. No email attachment will be de-duplicated against a loose file. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI. If, following consultation between the Parties, global de-duplication across the entire collection is agreed to, a field will be provided that lists each custodian, separated by a semicolon, who was a source of that document.

15. If any file requires proprietary software to open, then the Parties shall meet and confer regarding the most reasonable and cost effective manner to allow all Parties to have full access to the file.

**C. Miscellaneous**

16. The Parties agree that by preserving electronically stored information for the purpose of this litigation, they are not conceding that such information is discoverable, nor

1    are they waiving any claim of privilege, nor do they concede any obligation to preserve

2    such information.

3            17.     Except as specifically provided herein, nothing in this Stipulation shall affect

4    any rights or obligations of the Parties, including the obligation of the Parties to preserve

5    electronically stored information, documents or information for purposes other than this

6    pending litigation, such as pursuant to administrative order, statute, or in response to other

7    actual or anticipated litigation.

8            18.     The Parties agree to work together by exchanging sample production to

9    ensure that all Parties receive productions in a format that works for them. The Parties

10   acknowledge that as discovery proceeds, issues regarding specific items or particular file

11   formats may arise that are not addressed in or are not contemplated by this agreement. The

12   Parties agree to revisit and amend this agreement as necessary to ensure that all Parties

13   receive full disclosure of all pertinent information, and to accommodate the practical

14   realities governing their respective electronic document capabilities. Only after the Parties

15   have  met and conferred to resolve any disputes  may a Party petition the Court for a

16   variance from these terms in the event of unforeseen or unusual circumstances that could

17   result in excessive costs or burden.

18           19.     No Party shall seek sanctions against the other Party for the other Party's

19   failure to comply with preservation obligations absent a showing of willful misconduct.

20           20.     This stipulation shall not pertain to documents that are required to be, or are,

21   produced as part of expert disclosures or discovery.  The Parties shall meet and confer at

22   least thirty days prior to the beginning of expert discovery in order to discuss whether a

23   stipulation regarding the manner for production of relevant documents can be agreed to.

24           IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

25   DATED:      September 10, 2013          WOOD, SMITH, HENNING & BERMAN
                                            LLP
26

27                                          By: s/ David F. Wood

                                            - 5 -
28

1
2

DAVID F. WOOD
GREGORY P. ARAKAWA

3
4

Attorneys for Plaintiff,
CHARTIS SPECIALTY INSURANCE
COMPANY

5
6
7
8
9

SCOTT L. DAVIS
(*admitted pro hac vice*)
MATTHEW J. SCHROEDER
(*admitted pro hac vice*)
COLIN G. MARTIN
(*admitted pro hac vice*)
GARDERE WYNNE SEWELL LLP

10

DATED:      September 10, 2013

PILLSBURY WINTHROP SHAW
PITTMAN LLP

11
12
13

By: s/ Mark E. Elliot
MARK E. ELLIOT
REYNOLD L. SIEMENS

14

Attorneys for Plaintiff,
WHITTAKER CORPORATION

15

16

DATED:      September 10, 2013

ROBERT G. DREHER
Acting Assistant Attorney General

17
18
19
20
21

By: s/ John Thomas H. Do
C. SCOTT SPEAR
MICHAEL C. AUGUSTINI
JOHN THOMAS H. DO
Environment & Natural Resources Division
U.S. Department of Justice

22

Attorneys for Defendant,
UNITED STATES OF AMERICA

23

24

*Filer attests that concurrence in the filing has been obtained from counsel for CHARTIS

25

SPECIALTY INSURANCE COMPANY and WHITTAKER CORPORATION.

26
27
28

- 6 -

[PROPOSED] JOINT PLAN RE ELECTRONICALLY STORED INFORMATION
CASE NO. CV-13-1527 EMC

1

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

2

3   DATED: _____9/25_____, 2013

4                                              Honorable Edward Chen
                                               United States District Judge
5

6                   IT IS SO ORDERED

7

8                   Judge Edward M. Chen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] JOINT PLAN RE ELECTRONICALLY STORED INFORMATION
CASE NO. CV-13-1527 EMC